UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                <u>FOR ONLINE PUBLICATION ONLY</u>

----------------------------------------------------------------- X

VICTORIA MEDER,                             :
                                            :
                            Plaintiff,      :          MEMORANDUM
                                            :          <u>AND ORDER</u>
            - against -                     :
                                            :          05 CV 919 (JG)
                                            :
THE CITY OF NEW YORK and the                :
NEW YORK CITY DEPARTMENT OF                 :
EDUCATION,                                  :
                                            :
                            Defendants.     :
----------------------------------------------------------------- X

A P P E A R A N C E S :

            LAW OFFICE OF ANTHONY D. DENARO, P.C.
                    62 Nichols Court
                    Suite 200
                    Hempstead, N.Y. 11550
            By:     Anthony D. Denaro
                    Attorneys for Plaintiff

            MICHAEL A. CARDOZO
                    Corporation Counsel of the City of New York
                    100 Church Street, Room 2-102
                    New York, N.Y. 10007
            By:     Jonathan Bardavid
                    Attorney for Defendants

JOHN GLEESON, United States District Judge:

            Victoria Meder, a former teacher with the New York City Department of

Education ("DOE"), brings this action pursuant to the Age Discrimination in Employment Act of

1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the New York State Human Rights Law, N.Y.

Exec. Law § 290 *et seq.*[1]  Meder claims her employer discriminated against her because of her age, created a hostile work environment because of her age, and took retaliatory action against her because she had previously filed a lawsuit against the DOE's predecessor agency.  The defendants have moved for summary judgment.  For the reasons set forth below, the motion is granted.

BACKGROUND[2]

Meder was born on July 26, 1939.  At the time she filed this lawsuit, she had been employed as a teacher in the New York City public schools for 17 years.

In September 2001, Meder was transferred to P.S. 220 in Queens.  On March 22, 2002, Meder filed a lawsuit against, *inter alia*, the New York City Board of Education, alleging discrimination and the creation of a hostile work environment on the basis of her age during the 2000-01 school year, when she had been assigned to P.S. 108.  *See Meder v. City Sch. Dist. of New York*, 02-CV-1774 (CPS) (SMG) (E.D.N.Y. Mar. 22, 2002) .

Lawrence Pearlstein was appointed Principal of P.S. 220 in May 2002.  Meder received a "satisfactory" rating on her annual performance evaluation by Pearlstein for the 2002-03 school year.  In September 2003, Hope Monnes was appointed Assistant Principal of the

---

[1]     Meder also sued under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  That claim is not at issue.  The analysis of Meder's claims pursuant to the New York State Human Rights Law parallels the analysis of her federal antidiscrimination claims.  *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001), *cert. denied*, 534 U.S. 993 (2001).

[2]     Unless noted otherwise, these facts are not in dispute and are taken from the defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1.  That local rule provides in relevant part that "each statement" listed by a movant or opponent in their Rule 56.1 papers, "*including each statement controverting any statement of material fact*, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)."  Local Civ. R. 56.1(d).  Meder's Rule 56.1 statement fails to provide any such citations.  At oral argument, plaintiff's counsel was unable to supplement the statement with any citations to the record.  Accordingly, I do not consider that statement to controvert any of defendants' statements of facts.

school.  In this action, Meder complains of conduct that she alleges took place during the 2003-04 school year, following Monnes's appointment.

Meder alleges a variety of harassing conduct.  First, she claims that she was subjected to excessive scrutiny.  Specifically, Meder contends that Pearlstein and Monnes visited her classroom frequently.  They are required to visit classrooms and monitor teachers, but Meder alleges other teachers were not subject to such frequent visits.  Meder further claims that Beth Segal, the Math Coach assigned to assist teachers with a new curriculum for the second grade, visited her classroom 20 to 25 times, more frequently than she visited other teachers.  Segal once interrupted the lesson and began to teach it herself; she also reviewed Meder's students' notebooks, and tested them.  Defendants assert that Segal's responsibility was to visit all teachers, but Meder believed only new teachers were subject to Segal's review.  *See* Meder Dep. 152, June 28, 2006.  Meder also contends that teams of parents, teachers and administrators assigned to visit classrooms pursuant to a Performance Assessment in Schools System ("PASS") Review conducted of the entire school spent a disproportionate amount of time in her classroom.

Second, Meder alleges that she was subjected to unfair criticism of her job performance.  On October 29, 2003, after a formal evaluation, Monnes rated as unsatisfactory a literacy lesson taught by Meder.  Meder believed that the evaluation contained false information.  *See id.* at 201.  The evaluation was bracketed by pre- and post-observation conferences between Meder and Monnes.  Meder filed a grievance objecting to the evaluation, which was denied at all three levels of the grievance process.  On November 10, 2003, Pearlstein put in Meder's personnel file a letter he had sent to her discussing her absence from part of a staff development meeting.  Meder filed a grievance objecting to the letter, which was sustained.  The letter was

removed from the file the same day. On November 18, 2003, a parent of a student in Meder's class complained to Pearlstein that Meder had assigned a repetitive writing assignment. On December 16, 2003, Pearlstein sent Meder a letter informing her the assignment was not an approved disciplinary response. The same day, Monnes wrote Meder a memorandum stating Monnes had seen Meder leave students unsupervised in the school lobby and that it was inappropriate to do so. Meder denies she did so, and sent Monnes a response to that effect. On June 1, 2004, Pearlstein, Meder, and Meder's union representative met to discuss her punctuality. Pearlstein told Meder her time card indicated she had been late 15 times during the school year -- Pearlstein approved each incident except one. Pearlstein sent Meder a memorandum memorializing the discussion. The record reflects some dispute about whether Meder was in fact late on some of those occasions. *See id.* at 231. Finally, Meder claims Monnes criticized her unfairly for not timely completing certain testing of her students -- Meder alleges she was given insufficient time to complete the testing.

Third, Meder alleges that Pearlstein sent a Suffolk County Police Officer to visit her home when she was out sick from work. Defendants state, and Meder does not dispute, that the school secretary had been concerned for Meder's welfare on that day, as severe storms were reported, Meder had not reported to work, and the secretary was unable to reach her. Defendants state, and Meder does not dispute, that the secretary called the police to check on Meder out of concern for her safety.

Fourth, Meder claims several instances of harassment by Pearlstein. She alleges that he placed documents in her file that did not belong there; upon Meder's request, the documents were removed. She also claims that on October 24, 2003, Pearlstein denied her

request to leave work a half-hour early a few days later.  She further contends that Pearlstein

assigned her a disproportionate number of students that were problematic; held up a tape

recorder to her face when waiting for a response to a question; and shouted at her on at least two

occasions in front of her students.

Fifth, Meder claims that in May 2004, Monnes sat next to her at a meeting and

stared at her constantly, until she felt intimidated.

Sixth, Meder claims she received an undeserved rating of "unsatisfactory" on her

annual performance evaluation.  That evaluation, however, reflects that she received a

satisfactory rating.  *See* Bardavid Aff. Ex. BB, Oct. 20, 2006.

Meder points to two incidents that she claims demonstrate discriminatory animus.

In February 2004, Pearlstein gave a speech at a faculty conference in which he mentioned that a

former principal was retiring, and that "she's 61 years old and it's about time."  Meder Dep. 141,

June 28, 2006.  At that point, Meder claims the principal looked directly at her and a co-worker.

Meder also claims that while she was observing a co-worker's class, the co-worker told the

students a story about a "grouchy" old woman who was "not nice."  *Id.* at 207.  In her complaint,

Meder also claims that Pearlstein made a remark demonstrating retaliatory animus because he

responded to her request for a class change because of inappropriate behavior by a male

colleague by suggesting that she "take an action out."  Compl. ¶ 39.

After the conclusion of the 2003-04 school year, Meder transferred, upon her

request, to another school.

## DISCUSSION

A.      *The Summary Judgment Standard of Review*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). For summary judgment purposes, a fact is "material" when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, the test for whether an issue is genuine requires "the inferences to be drawn from the underlying facts [to] be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). Critically,

> the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586.

Although issues of discriminatory animus are not always resolvable at summary judgment, the Second Circuit has "remind[ed] district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir. 1994)), *cert. denied*, 540 U.S. 811 (2003).

B.      *The Age Discrimination Claim*

The ADEA makes it illegal for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  The Second Circuit applies the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to ADEA discrimination claims.  *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000).  Under this analysis,

> a plaintiff first bears the "minimal" burden of setting out a *prima facie* discrimination case, and is then aided by a presumption of discrimination unless the defendant proffers a "legitimate, nondiscriminatory reason" for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination.

*McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citations omitted).

Defendants argue that Meder failed to meet her burden to produce evidence constituting a prima facie case of age discrimination.  Establishing a prima facie case requires the production of evidence that the complainant (1) "was within the protected age group," (2) "was qualified for the position," (3) "was subject to an adverse employment action," and (4) that "the adverse action occurred under circumstances giving rise to an inference of discrimination."

*Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003) (internal quotation marks omitted). Defendants concede, for the purposes of their motion, that Meder has satisfied the first and second requirements. They argue that Meder has failed to meet the third and fourth requirements. I agree.

An adverse employment action is "a materially adverse change in the terms and conditions of employment," something "more disruptive than a mere inconvenience or an alteration of job responsibilities," such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya*, 202 F.3d at 640 (internal quotation marks and citations omitted).

Under this standard, most of the actions alleged by Meder do not constitute adverse employment actions. She has alleged no material change to the terms and conditions of her employment -- the evidence suggests only that her benefits and responsibilities remained the same. Her allegations of excessive scrutiny do not change this conclusion. *See Nicastro v. Runyon*, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) (holding that excessive scrutiny by supervisors does not constitute an adverse employment action under Title VII). Accordingly, even if Pearlstein, Monnes, Segal, and others subjected Meder to more monitoring than they did other teachers, that is not sufficiently material a change to her conditions of employment to count for ADEA antidiscrimination purposes.

Unfair criticism and other unpleasant working conditions are not adverse employment actions either. *See Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("'[B]eing yelled at, receiving unfair criticism, receiving unfavorable schedules or work

assignments . . . do not rise to the level of adverse employment actions . . . because they [do] not have a material impact on the terms and conditions of Plaintiff's employment.'" (quoting *Lee v. New York State Dep't of Health*, No. 98 Civ. 5712, No. 99 Civ. 4859, 2001 U.S. Dist. LEXIS 11287, at *69 (S.D.N.Y. March 26, 2001)). Thus, the written and oral criticisms of Meder by Pearlstein and Monnes, even if unjustified, are not adverse employment actions. Similarly, that Pearlstein assigned Meder more students than other teachers, shouted at her twice, held a tape recorder to her face to record an answer, and so forth, and that Monnes stared at Meder at a meeting, are, no doubt, irritating behaviors. But they are not actionable.[3]

Meder makes a stronger case for discrimination with the claim that Pearlstein sent a police officer to her home when she was out sick. Without more to the story, such a visit is consistent with the interpretation that Pearlstein was intimidating Meder because she took a sick day. I infer that sick days were part of Meder's terms and conditions of employment and that she had to right to take a sick day on the day in question. In such a circumstance, sending a police officer to intimidate Meder for taking a sick day, or to force her to come to work, would effectively deny Meder her right to sick days. Such a material alteration of the terms and conditions of Meder's employment would constitute an adverse employment action.

But defendants state, and Meder does not controvert, that Pearlstein's secretary

---

[3]    A negative performance evaluation might, granting all inferences in favor of Meder, constitute an adverse employment action. *See Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 756 (2d Cir. 2004). As discussed above, however, and as pointed out by defendants, *see* Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 ¶ 92, the performance evaluation in question states that Meder received a satisfactory rating. *See* Bardavid Aff. Ex. BB, Oct. 20, 2006. Meder concedes this point, both because her response to defendants' Rule 56.1 statement says she has "[n]o response" to the factual claim, *see* Plaintiff's Response to Defendant's [sic] Statement of Undisputed Facts ¶ 92; Local Civ. R. 56.1(c) ("*Each numbered paragraph in the statement of* material facts set forth in the statement required to be served by the moving party will be deemed to be admitted *for the purposes of the motion* unless *specifically* controverted by a *correspondingly numbered paragraph in* the statement required to be served by the opposing party."), and because that response is insufficient as a matter of law, *see supra* note 2.

9

called the police to Meder's house because she was concerned for Meder's welfare, not because of any discriminatory animus. *See* Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 ¶ 75 ("Ms. Crawford was concerned for plaintiff's safety and called the Suffolk County Police Department to check on plaintiff."). Accordingly, the employment action did not occur under circumstances giving rise to an inference of discrimination.

In sum, then, none of the actions complained of can support Meder's discrimination claim. Meder argues, however, that taken together the harassment of Pearlstein, Monnes, and others drove her out of the school. Constructive discharge is an adverse employment action based on the employer "intentionally creat[ing] a work atmosphere so intolerable that [the employee] is forced to quit involuntarily." *Terry*, 336 F.3d at 151-52. The trouble with this argument is that Meder did not quit. Rather, she transferred to another school. The constructive discharge doctrine permits the employee to recharacterize an ostensibly voluntary resignation -- it is not an exception to the rule that purely lateral transfers are not adverse employment actions. *See Galabya*, 202 F.3d at 240-41. As Meder produces no evidence whatsoever "'that the transfer created a materially significant disadvantage," *id.* at 241 (internal quotation marks omitted), I cannot conclude she was constructively discharged.

Accordingly, Meder has not met her burden of production for a prima facie case of age discrimination.

C.      *The Hostile Work Environment Claim*

Meder argues that the conduct in question created a hostile work environment. Title VII affords relief where a plaintiff can establish that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotations omitted). Courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. There is both a subjective and an objective component to the hostile work environment test. *See Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001). In addition, the complainant must establish that the conduct occurred "because of" a protected characteristic. *Id.* at 692. The hostile work environment analysis under the ADEA tracks that of Title VII. *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

Meder fails to produce evidence from which a rational jury could conclude that the actions she alleges constituted a hostile work environment. The record contains plenty of evidence that Meder herself felt her environment was abusive, but no evidence that the conduct she complains about was objectively so severe as to alter the terms and conditions upon which Meder was employed. There is no evidence, for example, that those actions affected Meder's work performance. Even viewing the evidence in the light most favorable to Meder, most of the alleged conduct reflects overinvolvement and micromanaging by Meder's supervisors on work-related matters. She does allege that the principal and a co-worker made remarks that could be construed as indirectly antipathetic toward Meder's age, that Pearlstein shouted at her and held a microphone to her face to record a response, and that Monnes stared at her during a meeting. But a hostile work environment is something more than having a difficult or aggressive boss. It is a pervasively toxic environment, necessarily affecting the terms and conditions under which one is employed. I conclude that, as a matter of law, the facts alleged are insufficient to sustain a

finding that such an environment existed here.

D.     *The Retaliation Claim*

The ADEA prohibits an employer from retaliating against an employee for opposing an unlawful employment practice or for participating in any manner in an investigation, proceeding, or litigation pursuant to the ADEA.  *See* 29 U.S.C. § 623(d).  A prima facie case for retaliation consists of evidence of (1) participation in such a protected activity with (2) the knowledge of the employer, (3) that the employee suffered a materially adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action.  *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006).  While Meder filed a discrimination lawsuit that might provide the predicate for a retaliation claim, Meder's prima facie case for retaliation fails because she proffers no admissible evidence linking the offending actions to any retaliatory animus.[4]

Meder alleges in her complaint that Pearlstein responded to her request for a class transfer by suggesting that she "take an action out."  Compl. ¶ 39.  Though I doubt that such a comment, if made, is sufficient evidence of a retaliatory animus, I need not decide that question because Meder points to nothing in the record to support her allegation, and I can find no such evidence in the affidavits, admissions, or depositions before the Court on this motion.  Of course, an allegation in a complaint is itself inadmissible evidence of retaliatory animus.  *See* Fed. R. Civ. P. 56(e).

---

[4]     Because I conclude that Meder's prima facie case fails for want of evidence of animus, I do not consider whether Meder presents sufficient evidence of an adverse employment action on her retaliation claim, that is, whether the alleged actions "could well have dissuaded a reasonable employee in [Meder's] position from complaining of unlawful discrimination."  *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006) (applying the Title VII adverse employment action standard established in *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405 (2006), to an ADEA claim).

Meder also alleges, in her complaint and in her response papers, that she was the victim of disparate treatment. Evidence of such treatment can support a finding of animus. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001), *cert. denied*, 534 U.S. 993 (2001). But Meder points to no evidence that the teachers she claims were treated differently were similarly situated, and again I find no such evidence myself in the record. Accordingly, I conclude that Meder has not met her burden of producing evidence that, if credited, could support her claim of retaliation.[5]

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment on Meder's claims pursuant to the ADEA and the New York State Human Rights Law is granted.[6]

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
         April 27, 2007

---

[5]      Moreover, the passage of time between the filing of Meder's discrimination lawsuit, on March 22, 2002, and the alleged period in which the retaliatory activity took place, beginning in September 2003, was too great to permit any inference of discriminatory animus. "[D]istrict courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Garrett v. Garden City Hotel, Inc.*, No. 05-CV-0962 (JFB)(AKT), 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (collecting cases).

[6]      I therefore have no occasion to address defendants' remaining arguments.